IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGIC LABS, INC., | ) |
|         Plaintiff, | ) ) ) |
|     v. | )   C.A. No. 23-967 (RGA) ) |
| HORKOS, INC. d/b/a PRIVY | ) ) |
|         Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT HORKOS, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF MAGIC LABS, INC.'S FIRST AMENDED COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 35 U.S.C. § 101</u>**

OF COUNSEL:

Alyssa Caridis
ORRICK, HERRINGTON
  && SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA 90071
(213) 629-2020

Clement S. Roberts
ORRICK, HERRINGTON
  && SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

February 20, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant*

TABLE OF CONTENTS

Page

I. ARGUMENT ................................................................................................................... 1

    A. *Alice* Step One:  The Patent Is Directed To Patent-Ineligible Subject Matter. ................................................................................................................. 2

        1. The representative claim is directed to an abstract idea. ........................... 2

        2. The claims merely recite generic data transmission and manipulation. ................................................................................................ 4

        3. The claims are not directed to an improvement in computer functionality. ............................................................................................... 5

        4. The facts relevant to resolving this motion are undisputed. ...................... 7

    B. *Alice* Step Two:  The '321 Patent Does Not Include An Inventive Concept ......... 8

    C. Magic Should Not Be Granted Leave To Amend Its Complaint Again. .............. 10

II. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................................... 1, 3, 4

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ............................................................................................ 1

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................................................ 9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .......................................................................................... 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ............................................................................................. 1

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ............................................................................................ 6

*DDR Holdings, LLC v. Hotels.com*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................ 7

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................................................ 4, 5

*Improved Search LLC v. AOL Inc.*,
    170 F. Supp. 3d 683 (D. Del. 2016) ..................................................................................... 9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 7

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ............................................................................................ 8

*IPA Techs., Inc. v. Amazon.com. Inc.*,
    352 F.Supp.3d 335 (D. Del. 2019) ....................................................................................... 8

*LendingTree, LLC v. Zillow, Inc.*,
    656 F. App'x 991 (Fed. Cir. 2016) .................................................................................. 3, 4

*Network Congestion Sols., LLC v. U.S. Cellular Corp.*,
    170 F. Supp. 3d 695 (D. Del. 2016) ..................................................................................... 9

*Realtime Data LLC v. Array Networks Inc.*,
  556 F.Supp.3d 424 (D. Del. 2021)..................................................................................10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ..........................................................................................8

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019).........................................................................................7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)......................................................................................1, 7

*TaKaDu Ltd. v. Innovyze, Inc.*,
  No. CV 21-291, 2022 WL 684409 (D. Del. Mar. 8, 2022).........................................................5

*In re TLI Commc'ns Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)..........................................................................................9

*Trading Techs. Int'l v. IBG LLC*,
  921 F.3d 1084 (Fed. Cir. 2019)................................................................................6, 7, 9

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ........................................................................................6

*Validity, Inc. v. Project Bordeaux, Inc.*,
  No. 23-365, 2023 WL 6200287 (D. Del. Sep. 22, 2023).........................................................10

*Weisner v. Google LLC*,
  51 F.4th 1073 (Fed. Cir. 2022) ........................................................................................9

**Statutes**

35 U.S.C § 101................................................................................................1, 2, 10

Magic's Opposition fails to refute that the claims of the '321 patent are directed to an abstract idea and do not include an inventive concept. Nor does Magic identify any relevant disputed facts. The Court should grant Privy's Partial Motion to Dismiss with prejudice.

## I. ARGUMENT

The driving consideration in the § 101 inquiry is the claims themselves. *See, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). While the specification can help in understanding the *claimed* invention, "§ 101 analysis must always yield to the claim language." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). *Unclaimed* features are irrelevant to patent eligibility, both at *Alice* step one and step two. *Id.*; *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Magic's Opposition runs afoul of this principle and primarily advances arguments based on features that are not in the '321 patent claims.

Most notably, Magic repeatedly relies on the notion that an "access token" is necessary to "*request* the user's keys from the third-party key storage system." *See* D.I. 18 at 6, 8, 9, 10, 14, 16, 17. It cites this as a specific technological solution that improves security, *id.* at 8, as well as an inventive concept at step two, *id.* at 16. At times, Magic also implies that "access tokens" are needed "to *access* the user's keys." *Id.* at 5, 6, 9, 13. But the claimed invention recites *setting up* third-party key storage. '321 patent, 11:62-12:12 ("a program … to perform a method to setup"). It says nothing about "accessing" or "requesting" keys for later use. *Id.* And while the claims invoke a generic "access token," nothing in the claims (or even the specification) describes the "access token," requires it to have any particular functionality, or suggests that it plays any role in any future (unclaimed) request or access of keys. *See id.* at 4:54-55 (describing the "access token" as "allow[ing] client 110 to directly communicate with third party service 155," with no further details); *id.* at 11:62-12:12. The Court should not credit any argument in Magic's Opposition that

1

is premised on how keys are *accessed* or *requested* (be it from a user or a "malicious actor") because such functionality is not claimed and therefore has no place in this § 101 inquiry.

For the same reasons, Magic cannot rely on its argument that the invention's purported elimination of "a direct link"[1] "created an additional layer of protection." D.I. 18 at 8; *see also id.* at 2, 6, 14. This purported added protection is premised on the idea that a "malicious actor would now need to infiltrate" the client and the authentication system "*to obtain an access token to request*" the keys. *Id.* at 8 (emphasis added). This functionality is not claimed and therefore is irrelevant.

The same is true of the unclaimed "encryption process … performed on a third-party computer," *id.* at 5, as well as a number of unclaimed steps Magic describes from Figure 2A as part of the invention, *id.* at 7-8 (referencing steps by their numeric labels that substantively cover "[r]egister[ing] [a] new user," "[g]enerat[ing]… [an] access token," "[e]xchang[ing] [the] access token," and "[a]ccess[ing] [a] dedicated HSM"). Magic says these steps "create[] an additional layer of protection," *id.* at 7-8, and are part of the technological solution, *id.* at 5. But, again, these unclaimed steps, *see* '321 patent, 11:62-12:12, are irrelevant to the § 101 inquiry.

### A. *Alice* Step One: The Patent Is Directed To Patent-Ineligible Subject Matter.

#### 1. The representative claim is directed to an abstract idea.

Magic's own admissions confirm that claim 11[2] is directed to using software—including an "authentication system"—to facilitate the known process of setting up third-party key storage.

---

[1] Magic also offers insufficient explanation for how its claimed invention eliminates a "direct link between the user and key storage system." D.I. 18 at 8. The claims *require* that the user "send[] … the access token" and "the key" directly to the third-party key storage provider. '321 patent, 12:9-13. Nothing in the patent bars a direct link between the user and third-party key storage provider either. The absence of a "direct link"—whatever that may be—is, at best, unclaimed.

[2] Magic does not dispute that claim 11 is representative of all the '321 patent claims for § 101 purposes. D.I. 18 at 6; *see also* D.I. 17 at 4 n.3, 19-20.

2

Magic acknowledges that setting up third-party key storage was known before the '321 patent. D.I. 18 at 4; *see* D.I. 17 at 3. And it recognizes that the claimed invention facilitates that process using software: "[T]he claimed invention provides a system for setting up [third-party key storage]."³ D.I. 18 at 7. Specifically, the authentication system connects a user with a third-party key storage provider via an "access token," alleviating the supposed "burden and expense" of the user handling that set up process by themselves. D.I. 18 at 5, 7-8; *see* D.I. 17 at 7. Thus, there is no dispute that claim 11 is directed to software that facilitates a known set up process. D.I. 17 at 6-7; D.I. 14 ¶ 33.

Privy's Motion explained (at 7-9) that claims reciting software facilitation of a known process are directed to an abstract idea, just like the claims in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991 (Fed. Cir. 2016). Magic does not dispute this general principle. *See* D.I. 18 at 12. But, according to Magic, *Alice* and *LendingTree* are inapposite because "Magic's claimed invention does not merely substitute software for a human," but rather "fundamentally change[s] the architecture of the existing process." D.I. 18 at 12.

Magic offers no explanation to support these blanket statements. To start, Magic fails to explain what the *claimed* software does beyond facilitate the known process of setting up third-party key storage. In Magic's own words, the authentication system simply provides the user with an "access token [that] allows the client device to 'directly communicate' with the key storage

---

³ Magic uses the term "wallet," but in this context, the term is synonymous with third-party key storage. Privy treated it as such in its Motion, and Magic does not argue that "wallet" has a meaning distinct from "third-party key storage." Instead, Magic's FAC and Opposition similarly treat the terms as equivalent. The patent does the same. '321 patent, 3:6-9 ("[T]he present technology uses a 'hardware wallet' system, … remote from the user's device, to store key information … .").

system." D.I. 18 at 8.  Connecting a user with a third-party key storage provider *is* facilitating the set up of such storage.  Magic identifies nothing more.  And while Magic says (at 2, 6, 8, 14) that the supposed lack of a "direct link" between the user and the third-party key storage provider changes the architecture of "the prior art"—*but see supra* 2—that new "architecture" is simply the practical effect of adding a facilitating intermediary to *any* existing process.[4]  The *Alice* software, for instance, could similarly be said to have changed the architecture of "exchang[ing] … financial obligations between two parties" because it was added as a third-party software intermediary to facilitate the exchange.  *Alice*, 573 U.S. at 213; *see also LendingTree*, 656 F. App'x at 993, 999 (adding a software intermediary between lenders and loan applicants).  Yet *Alice* and *LendingTree* make clear that claims directed to use of an intermediary are abstract.  Nothing about the associated architectural changes alter that conclusion.  *See* D.I. 17 at 7-8.

      **2.**      **The claims merely recite generic data transmission and manipulation**.

As Privy explained, claim 11's abstractness is confirmed by its failure to recite anything more than generic data transmission and manipulation.  D.I. 17 at 9-10 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).  Magic does not dispute that such claims are abstract but argues that *Electric Power* is inapplicable here because claim 11 supposedly involves something *in addition* to "gathering and analyzing data."  D.I. 18 at 13-14.

It is unclear what additional component Magic means.  Claim 11 involves only four steps: three that claim "sending" or "receiving" data, and one that claims "generating" data.  *See* D.I. 17 at 9-10.  All the steps are generic data transmission and manipulation.  To the extent Magic is arguing that these "specific" steps involve more than data manipulation and transmission because

---

[4] Magic also argues that (1) the "access tokens" are "for the user to access their keys at a third-party key storage system" and that (2) the authentication system does not "hav[e] access to the user's keys."  D.I. 18 at 13.  These concepts are not in the claim language and therefore not relevant to the present motion.

they "yield[] concrete improvements" to a broader system, D.I. 18 at 13-14, that is no different from *Electric Power*, where the claimed data transmission and manipulation steps improved the functionality of the power grid, 830 F.3d at 1353-54. That a claim reciting data manipulation has concrete benefits does not mean it is non-abstract.

Nor are the claims here analogous to those in *TaKaDu Ltd. v. Innovyze, Inc.*, No. CV 21-291, 2022 WL 684409 (D. Del. Mar. 8, 2022), as Magic claims. D.I. 18 at 14. The *TaKaDu* claims taught specific "ways of analyzing … data" related to "water utility networks and resource distribution"—including ways to compare "predicted and actual values to determine anomalous events" and "a way of enriching GIS data and then analyzing [this data]." 2022 WL 684409, at *4-5. Notably, the specifications "provide[d] … example[s]" of how these methods differed from "prior art systems" analyzing the same data. *Id.* at *4. In contrast, claim 11 does not "teach particular ways of achieving" data transmission and manipulation—it "merely instructs" the generic performance of such functions. *Id.* at *5; D.I. 17 at 9-10. The specification never indicates that the claimed data transmission and manipulation differs in any way from what was generic.

        **3.**    **<u>The claims are not directed to an improvement in computer functionality</u>**.

Privy's Motion also explained (at 3, 11-12) that the software facilitation provided by the '321 patent was not an improvement in computer functionality—it improved user experience. Specifically, the First Amended Complaint ("FAC") alleges that the patent makes setting up third-party key storage easier and more "convenien[t]." D.I. 14 ¶ 32; *id.* ¶ 27; D.I. 17 at 7, 11, 13. The '321 patent did so by providing for software that connects a user to a third-party key storage provider, thereby facilitating the known set up process. D.I. 17 at 10-14. But the claims provide no technical details regarding how the connection between the user and the third-party key storage provider is made. And, beyond the initial provision of an "access token," nothing in claim 11

5

alters the steps of the prior art process for setting up third-party key storage (*i.e.*, a user generating a key and then sending it to a third-party key storage provider for storing, D.I. 14 ¶¶ 27, 32).  The Federal Circuit has repeatedly recognized that using a computer as a tool to make a known task easier does not confer eligibility.  D.I. 17 at 11, 13.

Magic acknowledges that the '321 patent fundamentally addresses a user experience problem, but nonetheless argues that it constitutes a non-abstract improvement because the prior art was supposedly too complicated to be a "genuine solution" for "[t]he overwhelming majority of relevant users."  D.I. 18 at 5.  But improving computer usability does not render claims non-abstract.  *E.g.*, *Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1084, 1089, 1094 (Fed. Cir. 2019) ("improving … the intuitiveness and efficiency of prior GUI tools" did not "solve a technical problem"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (similar).  Magic cites no contrary authority.  And while *Magic* asserts that claim 11 "recite[s] [a] technological improvement [and] how it is implemented," D.I. 18 at 14, nothing in the claims (or specification) describes any technical details of the supposed improvement.  For instance, while Magic relies on the specification's statement that the third-party key storage provider "generates a master key and scoped credentials" after "receiv[ing] the access token," D.I. 14 ¶ 35 (quoting '321 patent, 4:57-61), the claims include no reference to these steps or components, D.I. 17 at 11.  And, even as to the claimed steps, the specification describes the "access token" in generic, functional language—with no technical details.  As in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021), this lack of technical specificity means claim 11 fails to recite "a specific technical solution … to a technological problem."  *Id.* at 1352; D.I. 17 at 12.

Magic further argues that claim 11 is patent eligible because it addresses "a problem that arises in the context of [blockchain]."  D.I. 18 at 9-11.  But claims do not escape abstractness

6

simply because they arise in a technical context and purport to solve computer-based problems. *See Synopsys*, 839 F.3d at 1139 (rejecting the argument that simply because claims to "complex algorithms" "relate to … computer-based" technology, they "are not directed to ineligible subject matter"); *Trading Techs.*, 921 F.3d at 1093 (Fed. Cir. 2019) (similar).  Even assuming the preamble is limiting as Magic seems to argue, these terms merely recite a field of use, which does not cure the abstractness of the claims.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The cases on which Magic relies do not say otherwise.  In *SRI International, Inc. v. Cisco Systems, Inc.*, the court found claims non-abstract because they were directed "to *using a specific technique* … to solve a technological problem"—"using a plurality of network monitors that each analyze specific types of data."  930 F.3d 1295, 1303 (Fed. Cir. 2019).  It was this "specific asserted improvement" that made the claims non-abstract, not—as Magic incorrectly suggests (at 10-11)—the computer-based context in which the improvement arose.  *Id.*  Similarly*, DDR Holdings, LLC v. Hotels.com* cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent," and it made clear that the technical specificity of the claims was what rendered them non-abstract.  773 F.3d 1245, 1258 (Fed. Cir. 2014).  Claim 11, in contrast, recites the provision of a generic "access token" followed by the same functional steps involved in the prior art set up process; no specific technical improvement is claimed.  D.I. 17 at 6-14; *supra* 1-2.

Magic's remaining arguments regarding claim 11's supposed technical solution to a technical problem—using the "access token" for *requesting* keys and supposedly eliminating a "direct link"—are not claimed and are therefore irrelevant to the analysis.  *Supra* 1-2.

       **4.**      **<u>The facts relevant to resolving this motion are undisputed</u>**.

Magic claims that Privy's reliance on Magic's own factual allegations "raises a factual dispute over what existed in the prior art" and over the solution offered by the '321 patent. D.I. 18

7

at 1, 11-15, 19.  But Magic never actually identifies any particular factual allegation—about the prior art or anything else—that Privy fails to accept as true.  Instead, the arguments that Magic characterizes as "factual disputes" are simply legal questions—for example, whether the claimed "authentication system" is directed to an improvement in computer technology.  *Id.* at 14-15.  This is "an issue of law" that can be resolved based on the intrinsic record.  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017).

Magic also claims that Privy "oversimplif[ied] … the claimed system."  D.I. 18 at 13.  But Privy's analysis is based on the totality of the language in claim 11 and the facts as alleged, *see, e.g.*, D.I. 17 at 6-7, and Magic does not identify any particular claim element that Privy missed.  Instead, Magic's arguments on this front focus on *unclaimed* aspects of Figure 2A, which are irrelevant to the analysis and cannot be the basis of a factual dispute.  *Supra* 1-2; *see also IPA Techs., Inc. v. Amazon.com. Inc.*, 352 F.Supp.3d 335, 343 (D. Del. 2019) ("[F]actual allegations … which contradict the specification or the claims need not be credited as true … ."); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice …,' such as the claims and patent specification.").

B.  ***Alice* Step Two:  The '321 Patent Does Not Include An Inventive Concept**.

Magic also fails to rebut Privy's showing that the '321 claims contain no inventive concept.  D.I. 17 at 14-19.  Privy explained—and Magic does not dispute—that "access tokens" are "generic tokens," like those that courts have routinely rejected as providing inventive concepts.  *Id.* at 16 (discussing cases).  Nor does Magic dispute that every other individual component and step is conventional.  *Id.* at 12, 15-17; D.I. 18 at 17.

Instead, Magic argues that this Court can find an inventive concept in the ordered combination of the claimed steps.  But that principle applies to only "specific implementation[s]

8

of [an] abstract idea," *Weisner v. Google LLC*, 51 F.4th 1073, 1085 (Fed. Cir. 2022), not claims like these that recite a general concept without technical specificity.[5] The ordered combination Magic characterizes as an inventive concept is not in the claims. D.I. 18 at 16 (describing provision of "access tokens" "necessary to *request* the user's keys"); *supra* 1-2. To the extent Magic relies on the "ordered combination" that results purely from adding an intermediary, *supra* 3-4, that is the abstract idea itself and cannot provide eligibility. *Trading Techs.*, 921 F.3d at 1093.

Magic also argues (as it did at step one) that a factual dispute prevents resolution of Privy's motion—namely, a dispute regarding the conventionality of prior art third-party HSMs. D.I. 18 at 19. But the specification itself makes clear that third-party HSMs were conventional. It describes the claimed invention as simply utilizing prior art "third-party systems … such as for example Amazon, Inc." or "[o]ther third party platforms." '321 patent, 3:18-22. Where the specification treats a claim element as conventional, there can be no factual dispute. *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) (that "the specification … describes the [claimed components] as … performing functions 'known' in the art" resolves step two). That is especially true where the FAC confirms that third-party HSMs were one of "four options" used "[p]rior to Magic's invention." *See* D.I. 14 ¶ 25. Magic's only ground for arguing that third-party HSMs were not "conventional" is the notion that they were not user-friendly to certain users. D.I. 18 at 19. Nothing in the claims limits the solution to particular users, and conventionality for step two

---

[5] The other cases on which Magic relies (D.I. 18 at 18) similarly involve a level of technical specificity absent here. *See Improved Search LLC v. AOL Inc.*, 170 F. Supp. 3d 683, 694 (D. Del. 2016) ("[T]he methods recite sufficiently specific steps" "to conclude that the solution provided … is not a 'routine and conventional' use of computer … technology."); *Network Congestion Sols., LLC v. U.S. Cellular Corp.*, 170 F. Supp. 3d 695, 702-03 (D. Del. 2016) (similar); D.I. 17 at 17-18 (distinguishing *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)).

is assessed from the perspective of a "skilled artisan," not someone particularly *un*skilled. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

At most, the only element that Magic identifies as not "conventional" is the use of software to facilitate the set up process by connecting a user to a third-party storage provider. But, again, this is the abstract idea itself and cannot serve as the inventive concept under step two. *Supra* 9.

### C.    **Magic Should Not Be Granted Leave To Amend Its Complaint Again**.

Magic has already had an opportunity to amend its complaint in light of Privy's arguments. Privy's original Motion to Dismiss made the exact same arguments Privy now advances. Ex. A at 15-32 (redline comparing the motions). Magic has had the opportunity to add any responsive allegations it believed necessary to overcome dismissal under § 101.[6] That the complaint remains deficient shows that further "amendment would be futile." D.I. 18 at 20. Indeed, this Court routinely dismisses with prejudice when a party has already had an opportunity to amend the complaint in light of an opposing side's § 101 arguments. *See, e.g.*, *Realtime Data LLC v. Array Networks Inc.*, 556 F.Supp.3d 424, 435-37 (D. Del. 2021). And that is all the more appropriate where, as here, the intrinsic record makes clear that the claims are not directed to patent-eligible subject matter, and where Magic has not identified any claim terms requiring construction. *See Validity, Inc. v. Project Bordeaux, Inc.*, No. 23-365, 2023 WL 6200287, at *12 (D. Del. Sep. 22, 2023). There is no basis for granting Magic further leave to amend.

## II.    **CONCLUSION**

Defendant respectfully requests that this Court hold the '321 patent invalid under § 101 and dismiss the related claims with prejudice.

---

[6] Here, Magic responded to Privy's Motion to Dismiss by adding infringement allegations with respect to a second patent—the '120 patent. While Privy believes the '120 patent is invalid as well and denies all infringement allegations, this Motion solely concerns the same, originally-asserted '321 patent addressed by Privy's original Motion.

10

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Brian P. Egan* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Brian P. Egan (#6227) |
| Alyssa Caridis | 1201 North Market Street |
| ORRICK, HERRINGTON | P.O. Box 1347 |
|    & SUTCLIFFE LLP | Wilmington, DE  19899-1347 |
| 355 South Grand Avenue, Suite 2700 | (302) 658-9200 |
| Los Angeles, CA  90071 | jblumenfeld@morrisnichols.com |
| (213) 629-2020 | began@morrisnichols.com |
|  |  |
| Clement S. Roberts | *Attorneys for Defendant* |
| ORRICK, HERRINGTON |  |
|    & SUTCLIFFE LLP |  |
| The Orrick Building |  |
| 405 Howard Street |  |
| San Francisco, CA  94105 |  |
| (415) 773-5700 |  |
|  |  |
| February 20, 2024 |  |

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 North King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>Ragesh K. Tangri, Esquire<br>Timothy C. Saulsbury, Esquire<br>Michael Burshteyn, Esquire<br>Joyce C. Li, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Sara Doudar, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd.<br>Los Angeles, CA  90017<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)